[Civ. No. 6029.  Second Appellate District, Division One.—July 27, 1928.]

GEORGE KLEBE, Petitioner, v. INDUSTRIAL ACCI-DENT COMMISSION and W. A. ST. CLAIR, Re-spondents.

Bailie, Turner & Lake for Petitioner.

G. C. Faulkner and W. F. Beem for Respondents.

CRAIG, J.—Respondent St. Clair was injured while starting an automobile in his vocation of delivering ice at Huntington Park in Los Angeles County. He made application to the respondent Commission for compensation as against J. G. Knox and George Klebe, and after a hearing was awarded certain sums of money in cash and in weekly payments until the termination of disability, besides a hospital charge and that of his physician. This is an application of Klebe for review of such award. There is no dispute as to the correctness of the amounts allowed, but the petitioner contends that the applicant was not his employee at the time of the accident.

From the testimony of Knox and Klebe it appears that some three or four years previously to March 28, 1927, one Guthrie agreed in writing with the Central Ice & Cold Storage Company to purchase ice from it and to distribute ice with his own conveyances and at his own expense to all residents throughout the Huntington Park district. The text of the contract is not before us, but the only conditions imposed by the company and which are material to the instant proceeding apparently were that Guthrie should buy the company's commodity and satisfactorily supply all users within that territory. At some time thereafter Klebe became an employee of Guthrie, for whom he delivered ice over a portion of said territory, while Guthrie, with the assistance of a boy, did the delivering in the balance of the district. Knox testified that he later took the place of the boy, and delivered ice for Guthrie on commission. Subsequently Knox and Klebe purchased the route from Guthrie, and took over certain trucks which he had agreed to purchase, with the understanding that the ice company deduct or withhold from each a certain amount when settlements for ice were made. Knox and Klebe

agreed between themselves that the latter should have all the territory west of Seville Street, and that Knox should supply all of the district east thereof. Each purchased his own ice, at about 17½ cents per block of 300 pounds, which, when cut in smaller portions and sold, netted him about 63 cents per block.

Knox and St. Clair both testified that while the former was delivering ice at the home of the latter's daughter at some time prior to April 2, 1927, St. Clair asked for employment, whereupon Knox informed him that he did not need a solicitor, but that he had more territory than he could use; that St. Clair asked if he could rent a truck for a year or two, that he had previously been in the ice business, but did not have the means to buy a truck. Knox, it appears, purchased a second-hand truck, allotted to St. Clair certain portions of his territory, and it was agreed that St. Clair should buy his own ice, make his own collections and be responsible for the customers in such territory. It also appears that under Guthrie's contract with the ice company, which Knox and Klebe acquired, it was incumbent upon them or their successors to furnish the commodity to all residents of the entire district, but that under their contract between themselves neither one was to be responsible for the other's portion of the territory. Knox testified, and St. Clair in effect admitted, that Knox had no control over St. Clair's work, dealings with the ice company or deliveries to and collections from his customers, and that should the latter's business so increase that he could not supply his share of the territory he would obtain help at his own expense; that he should defray all expenses of operation, and that he was his own boss. St. Clair testified: "I wanted a contract for a certain length of time so I wouldn't get discharged after I got a good business worked up."

All of the evidence before us tends strongly to show that as to the petitioner in this proceeding, St. Clair was an independent contractor. Klebe did not know of any arrangement between St. Clair and Knox, nor did he know that anyone else was delivering ice in a portion of Knox's territory until some days after the applicant had taken it over. The latter made claim in writing, by regis-

tered mail, to Knox personally, when injured. Knox & Klebe had been using the same cards for advertising, bearing the names: "Huntington Park Ice Distributors. Knox & Klebe," and on those furnished the applicant he had printed: "The truck is at the Rita St. Garage. 1st Garage North on the right hand side. St. Clair." It affirmatively appears without contradiction that St. Clair had no dealing whatever with, and was in no way answerable to Klebe. Except for St. Clair's reply when asked why he included Klebe in this proceeding, that he saw both names on the cards, there is no evidence that he knew him.

█ The only possible ground upon which it might be argued that Klebe should be held for a *pro rata* share of this award would therefore of necessity depend upon the assumption that he was a copartner of Knox. Both of them denied that either was responsible for any portion of the expenses of the other, or entitled to any of his profits. It does not appear that both were charged by the ice company with the balance due on the trucks purchased by them from Guthrie, but they testified that it was their intention when such amounts were finally paid to account with each other as to those items. The sole remaining apparent *indicia* of a partnership relation consist of the cards and the joint names "Knox & Klebe." The only evidence with relation to these is that they could be printed cheaper in large quantities, and that for the sake of economy they were all purchased at the same time, bearing both names; that the name "Huntington Park Ice Distributors" was used by all distributors in that vicinity, at the instance and request of the ice company. Knox testified: "Klebe keeps what he makes, and I keep what I make"; "Mr. Klebe didn't have anything to do with this truck, I bought it myself; he didn't know anything about it when I bought the truck; . . . I figured that was on my side of the territory"; "I footed the bills on it and kept the rent." From the foregoing it is obvious that the elements of a partnership consisting of consent, carrying on a business together, and sharing profits between them, do not appear to have existed between Knox and Klebe herein. This being true, and from the entire absence of any relationship between Klebe and St. Clair personally, it follows that the

petitioner is not liable to the applicant on account of his injury.

The award is annulled.

Works, P. J., and Thompson, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on August 24, 1928.